# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-412

**BRYANT GEORGE, M.D., ET AL.**

**VERSUS**

**CHRISTUS HEALTH SOUTHWESTERN LOUISIANA**

**CONSOLIDATED WITH**

**BRYANT GEORGE, M.D., ET AL.**

**VERSUS**

**CHRISTUS HEALTH SOUTHWESTERN LOUISIANA, ET AL.**

**********

ON APPLICATION FOR SUPERVISORY WRITS FROM
THE FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NOS. 2010-6004 C/W 2011-2211
HONORABLE RONALD F. WARE, DISTRICT JUDGE

**********

## JIMMIE C. PETERS
## JUDGE

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and John E. Conery, Judges.

**WRIT GRANTED IN PART AND DENIED IN PART, AND THE MATTER IS REMANDED WITH INSTRUCTIONS.**

Timothy O'Dowd
921 Ryan Street, Suite D
Lake Charles, Louisiana 70601
(337) 310-2304
COUNSEL FOR PLAINTIFFS/APPLICANTS:
     Bryant George, M.D.
     Dura Mater, Inc.

Roy C. Cheatwood
Aubrey B. Hirsch, Jr.
Alexander M. McIntyre, Jr.
Baker Donelson Bearman Caldwell & Berkowitz, P.C.
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
(504) 566-5200
COUNSEL FOR DEFENDANT/RESPONDENT:
     CHRISTUS Health Southwestern Louisiana d/b/a CHRISTUS St. Patrick Hospital

Marshall J. Simien, Jr.
Simien & St. Mary, LLC
Capital One Tower, Suite 1110
One Lakeshore Drive
Lake Charles, Louisiana 70629
(337) 497-0022
COUNSEL FOR DEFENDANT/RESPONDENT:
     CHRISTUS Health Southwestern Louisiana d/b/a CHRISTUS St. Patrick Hospital

Jeff Landry
Attorney General
David Jeddie Smith, Jr.
Assistant Attorney General
P.O. Box 94005
Baton Rouge, Louisiana 70804-9005
(225) 326-6000
COUNSEL FOR THE STATE:
     Office of the Attorney General

Richard T. Simmons, Jr.
Hailey, McNamara, Hall, Lamann & Papale, LLP
One Galleria Blvd, Suite 1400
Metairie, Louisiana 70001
(504) 836-6500
COUNSEL FOR DEFENDANTS:
     Kathleen L. DeBruhl & Associates, LLC
     Kathleen L. DeBruhl
     Gilbert Ganucheau, Jr.

**PETERS, J.**

Dr. Bryant George and Dura Mater, Inc. filed this application for supervisory writs with this court seeking to set aside a protective order issued by the trial court which has the effect of shielding evidence in the possession of CHRISTUS Health Southwestern Louisiana d/b/a CHRISTUS St. Patrick Hospital (hereinafter referred to as "the hospital" or "St. Patrick Hospital") from the discovery process. For the following reasons, we grant the relief requested by Dr. Bryant George and Dura Mater, Inc. by setting aside the protective order at issue and remanding the matter to the trial court with instructions.

## DISCUSSION OF THE RECORD[1]

Dr. George is a neurosurgeon, and Dura Mater, Inc.[2] is a Louisiana corporation wholly owned by Dr. George. In the spring of 2009, St. Patrick Hospital, in Lake Charles, Louisiana, recruited Dr. George to relocate his medical practice from southeast Louisiana to Lake Charles.[3] To induce Dr. George to relocate, St. Patrick Hospital offered to immediately grant him hospital privileges and make office space and personnel available for his practice. Dr. George accepted the offer and entered into a contract with St. Patrick Hospital. St. Patrick Hospital also entered into a contract with Dura Mater, Inc. wherein it agreed to make office space and personnel available for Dr. George's practice.

When Dr. George began performing surgery at St. Patrick Hospital in April of 2009, the hospital provided physician "proctors" to observe and assess his

---

1 For the purpose of this opinion only, and unless otherwise specifically stated, the background giving rise to this litigation is derived primarily from the factual allegations set forth in the pleadings.

2 Dr. George uses the corporation to operate and manage his private medical practice.

3 Dr. George's pleadings suggest his practice was located in Slidell, Louisiana, while the hospital asserts that he moved a New Orleans, Louisiana practice to Lake Charles.

competency in surgery as well as his ability to provide for patients' needs; at no time between April and September of 2009 did these physicians express any concerns to Dr. George, or anyone else, concerning his professional performance. However, soon after he came to work with the hospital, Dr. George came to believe that the hospital was treating him differently from other similarly situated physicians, particularly with regard to the allotment of the operating facilities.[4] Because he considered the allotment procedure detrimental to his practice, he expressed his concerns to the hospital's administrative officers.

According to Dr. George, his complaints resulted in St. Patrick Hospital falsely accusing him of being inebriated while in the operating room of the hospital on September 9, 2009. On the same day this allegation surfaced, the hospital suspended his hospital privileges; sometime subsequent to this action by the hospital and on his attorney's advice, Dr. George voluntarily requested a medical leave of absence from the hospital. At this point, one of the hospital employees whose services had been provided to Dura Mater, Inc. started informing Dr. George's patients that he had stopped treating patients for an indefinite amount of time because he was suffering from alcoholism.

At some point in 2010 while he was still on medical leave, and without seeking any input from him, the St. Patrick Hospital's Peer Review Committee voted not to reinstate Dr. George's hospital privileges. He then formally applied for reinstatement pursuant to the hospital's rules, regulations, and bylaws, and the hospital denied his request.

On December 3, 2010, Dr. George and Dura Mater, Inc. filed the instant action now before us. In the original pleadings and the supplemental pleadings

_____

[4] Dr. George attributed the hospital's change in attitude toward him to a personality conflict and the hospital's disappointment in the amount of revenue he was producing.

2

that followed, Dr. George and Dura Mater, Inc. assert that St. Patrick Hospital breached its contracts with them and committed unfair trade practices, which caused them damages.[5] They further alleged that St. Patrick Hospital provided staffing personnel who were not capable of handling their duties and were morally unfit for the job. Additionally, they assert that on certain days when Dr. George performed elective surgeries at St. Patrick Hospital, he was not allowed access to an operating room that was specially equipped for neurosurgery, nor was he provided competent staff to assist him with the neurosurgeries that he performed. Furthermore, when Dr. George began to complain about issues which were interfering with his ability to perform under his contract with the hospital, his concerns were not addressed and St. Patrick Hospital "set out on a course to get rid of him[.]"

Dr. George asserts that the personal biases which resulted in him losing his hospital privileges and destroyed his practice continued after his relationship with St. Patrick Hospital terminated. Furthermore, he asserts that the hospital's malice toward him is evidenced by the way other similarly situated physicians were treated, specifically within the peer review process. He asserts that he discovered this divergent treatment through public records identifying physicians with questions of competency. St. Patrick Hospital denied his malice allegation and denied treating him differently from other physicians. It is this assertion which gives rise to the issue now before us.

During the course of discovery, Dr. George and Dura Mater, Inc. sought to obtain evidence from the hospital to support their position that other doctors subject to St. Patrick Hospital's peer review process were found to lack

---

[5] Dr. George and Dura Mater, Inc. have named other parties as defendants in the litigation, but their involvement in the litigation does not relate to the issue now before us.

competence and to be a threat to quality healthcare, but that those doctors were still granted hospital privileges despite these findings. Specifically, they asserted that they "wish to determine if these physicians and others associated with [St. Patrick Hospital] have had their competency reviewed through a peer review process and determine if they were treated differently (more favorably) than Dr. George due to prejudices held against Dr. George."

St. Patrick Hospital responded to discovery addressing these allegations with a motion for a protective order. In that motion, St. Patrick Hospital asserted that the peer review materials are protected from disclosure by La.R.S. 13:3715.3 and La.R.S. 44:7, the Louisiana peer review confidentially statutes. The trial court agreed and granted the motion for a protective order prohibiting Dr. George and Dura Mater, Inc. from obtaining discovery on these issues. Subsequent to the grant of the protective order, Dr. George and Dura Mater, Inc. filed a motion seeking to have La.R.S. 13:3715.3 and La.R.S. 44:7, or parts thereof, declared unconstitutional and to have the protective order set aside. Following a hearing, the trial court denied their motion and they filed the application for supervisory writs now before this court, arguing that:

> The Trial Court erred by refusing to declare La. R.S. 13:3715.3 and La. R.S. 44:7, or parts thereof, unconstitutional and refusing to lift [its] protective order that completely and forever shields relevant evidence from the light of day. In "derogation of the search for truth", [sic] this, unconstitutionally, resulted in denying the plaintiffs meaningful access to the courts.

**OPINION**

Since the question of the constitutionality of a statute has been raised, the Louisiana Attorney General (attorney general) joined in the litigation and filed a brief urging that this court affirm the trial court's determination that the statutes at

4

issue are constitutional. The arguments of all the parties are interrelated and will be addressed together.

### *Procedural Issue*

Both the attorney general and the hospital argue that the constitutional claims are not properly before this court. They base this argument on the fact that Dr. George and Dura Mater, Inc. did not specifically plead the unconstitutionality of the statutes in their original petition or in any of the three supplemental and amending petitions that followed.[6] While we agree that Dr. George and Dura Mater, Inc. did not specifically plead the constitutional issue in their petition or supplemental petitions, we still find no merit in this argument.

In reaching this conclusion, we recognize that "as a general rule a litigant cannot raise the unconstitutionality of a statute unless its unconstitutionality is specially pleaded and the grounds particularized." *Johnson v. Welsh*, 334 So.2d 395, 396 (La.1976). However, the definition of pleading in a civil action includes "petitions, exceptions, *written motions*, and answers." La.Code Civ.P. art. 852 (emphasis added). Additionally, it has long been settled that "when the unconstitutionality of a statute is specifically pled, the claim must be raised in a petition (the original petition, an amended and supplemental petition or a petition in an incidental demand), an exception, a *motion* or an answer." *Vallo v. Gayle Oil Co., Inc.*, 94-1238, p. 8 (La. 11/30/94), 646 So.2d 859, 865 (emphasis added). Therefore, we find that the constitutional claims raised by Dr. George and Dura Mater, Inc. in their motion are properly before this court.

---

[6] The third supplemental and amending petition, which was the last supplementation of the original petition filed before the trial court's ruling on protective order, was filed on October 27, 2015. The motion seeking a declaration that the statutes at issue are unconstitutional was filed by Dr. George and Dura Mater, Inc. on January 25, 2016.

## Constitutional Issue

Dr. George and Dura Mater, Inc. assert that they became aware of the disproportionate treatment of Dr. George through public records indicating "that numerous doctors in this community have suffered significant setbacks that may or may not be accompanied by questions of competency[,]" and that they wanted to determine whether these physicians "had their competency reviewed through a Peer Review process and determine if they were treated differently (more favorably) than Dr. George due to prejudices held against Dr. George." They argue that the evidence sought is relevant evidence as that term is defined in La.Code Evid. art. 401 and that the trial court's grant of the protective order denies them access to the courts of this state by preventing them from accessing evidence which would show that the actions taken against them by St. Patrick Hospital were for discriminatory motives and not for the betterment of the healthcare of its patients. They further assert that the statutes at issue allow hospitals to shield evidence from a litigant such that "access to the courts is illusory, not adequate, not effective and not meaningful."

The right of access to the courts is protected by the First Amendment right to petition for redress of grievances, as well as the Due Process Clause of the Fourteenth Amendment and the privileges and immunities provision of U.S. Const. art. IV. *Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983). Additionally, Louisiana's guarantee of the right to access the courts is governed by La.Const. art. 1, § 22, which provides that "[a]ll courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."

6

The statutes at issue are extensive in content and do place limitations on access to certain information generated within a medical care environment. Because of the extensive nature of the statutes, we will set them out in full while italicizing the language in the statutes which is pertinent to the issue before us. Louisiana Revised Statutes 13:3715.3 (emphasis added) reads as follows:

A. *Notwithstanding the provisions of R.S. 44:7(D) or any other law to the contrary, all records, notes, data, studies, analyses, exhibits, and proceedings of:*

(1) *Any public hospital committee, medical organization peer review committee*, any nationally recognized improvement agency or commission, including but not limited to the Joint Commission on Accreditation of Healthcare Organizations (JCAHO), or any committee or agency thereof, or any healthcare licensure agency of the Louisiana Department of Health and Hospitals, public hospital board while conducting peer reviews, dental association peer review committee, professional nursing association peer review committee, extended care facility committee, nursing home association peer review committee, peer review committee of a group medical practice of twenty or more physicians, peer review committee of a freestanding surgical center licensed pursuant to R.S. 40:2131 et seq., or health maintenance organization peer review committee, including but not limited to the credentials committee, the medical staff executive committee, the risk management committee, or the quality assurance committee, any committee determining a root cause analysis of a sentinel event, established under the bylaws, rules, or regulations of such organization or institution, or

(2) *Any hospital committee, the peer review committees of any medical organization*, dental association, professional nursing association, nursing home association, social workers association, group medical practice of twenty or more physicians, nursing home, ambulatory surgical center licensed pursuant to R.S. 40:2131 et seq., ambulance service company, health maintenance organization, any nationally recognized improvement agency or commission, including but not limited to the Joint Commission on Accreditation of Healthcare Organizations (JCAHO), or any committee or agency thereof, or any healthcare licensure agency of the Louisiana Department of Health and Hospitals, or healthcare provider as defined in R.S. 40:1299.41(A), or extended care facility committee, including but not limited to the credentials committee, the medical staff executive committee, the risk management committee, or the quality assurance committee, any committee determining a root cause analysis of a sentinel event, established by the peer review committees of a medical organization, dental organization, group medical practice of twenty or more physicians, social workers association, ambulatory

7

surgical center licensed pursuant to R.S. 40:2131 et seq., ambulance service company, health maintenance organization, or healthcare provider as defined in R.S. 40:1299.41(A), or private hospital licensed under the provisions of R.S. 40:2100 et seq., *shall be confidential wherever located and shall be used by such committee and the members thereof only in the exercise of the proper functions of the committee and shall not be available for discovery or court subpoena regardless of where located, except in any proceedings affecting the hospital staff privileges of a physician, dentist, psychologist, or podiatrist, the records forming the basis of any decision adverse to the physician, dentist, psychologist, or podiatrist may be obtained by the physician, dentist, psychologist, or podiatrist only.* However, no original record or document, which is otherwise discoverable, prepared by any person, other than a member of the peer review committee or the staff of the peer review committee, may be held confidential solely because it is the only copy and is in the possession of a peer review committee.

B. No employee, physician, dentist, public or private hospital, organization, or institution furnishing information, data, reports, or records to any such committee with respect to any patient examined or treated by such physician or dentist or confined in such hospital or institution shall be liable in damages to any person by reason of furnishing such information.

C. *No member of any such committee designated in Subsection A of this Section or any sponsoring entity, organization, or association on whose behalf the committee is conducting its review shall be liable in damages to any person for any action taken or recommendation made within the scope of the functions of such committee if such committee member acts without malice and in the reasonable belief that such action or recommendation is warranted by the facts known to him.*

D. Medicaid or Medicare benefits or insurance benefits provided by a private insurer shall not be denied to any person due to inability to secure records or proceedings referred to in this Section.

E. Nothing contained herein shall be construed to prevent disclosure of such data to appropriate state or federal regulatory agencies which by statute or regulation are otherwise entitled to access to such data.

F. Nothing herein shall be construed to prevent disclosure of a patient's hospital record, as defined by R.S. 40:2144, to the patient or his duly authorized representative.

G.(1) As used in this Subsection, the following terms shall mean:

(a)  "Board" means the Louisiana State Board of Medical Examiners, Louisiana State Board of Dentistry, Louisiana State Board of Psychologists, Louisiana State Board of Nursing, Louisiana Board of Pharmacy, as well as any Louisiana licensing and regulatory board or agency whose licensees, certificate holders, or registrants are subject to any form of peer review identified in Subsection A of this Section.

(b)  "Licensee" means an individual who possesses a license, certificate, or registration duly issued by a board, or an individual who has made application for such a license, certificate, or registration.

(2)  The boards defined in Subparagraph (1)(a) of this Subsection are hereby designated as appropriate state regulatory agencies as provided by Subsection E of this Section.  Any board whose licensees are subject to any form of peer review identified in Subsection A of this Section shall be granted access to such peer review information, data, reports, or records as that board determines is necessary to an investigation or an adjudication of an individual over whom such board has regulatory authority.  The board having access to such peer review information, data, reports, or records shall receive and maintain that information, data, reports, or records as confidential and privileged and shall take measures to preserve its confidentiality, including the assertion of all available evidentiary privileges and protection of patient identification as specified in R.S. 13:3715.1(J).

(3)  When such disclosure is requested and made in a manner authorized in Paragraph G(4) of this Subsection, the verbal, written or other disclosure of peer review information, data, reports, or records by any person, committee, hospital, or other peer review entity described in Subsection A of this Section to any board conducting investigation or adjudication functions shall not constitute a waiver of any legal or evidentiary privilege, nor form the basis of any claim or suit for damages or injunctive relief of whatsoever kind or nature, including breach of confidentiality or invasion of privacy or otherwise, nor deprive the person, committee, hospital, or other peer review entity making the disclosure of the benefit of the immunities otherwise provided in Subsections B and C of this Section.

(4)  *Disclosure is deemed to be authorized in any of the following circumstances:*

(a)  An interview of a witness or potential witness conducted by a duly authorized officer, employee, or attorney on behalf of the Louisiana board, acting in his or her official capacity, and accompanied by a validly issued investigatory subpoena or subpoena duces tecum.

(b)  As part of the production of documents in response to a validly issued investigative subpoena duces tecum by a board.

9

(c)　In response to questions or as part of production of documents at a duly noticed deposition or any other form of discovery authorized under R.S. 49:956(6) in an adjudication proceeding pending before such board.

(d)　In response to questions or information provided pursuant to a subpoena or subpoena duces tecum issued in connection with an adjudication proceeding conducted by a board, which hearing may be conducted in executive session to preserve confidentiality of peer review privileged materials, including information, data, reports, and records.

(e)　*In response to duly authorized discovery as contemplated by the Louisiana Code of Civil Procedure*, surveys, statements of deficiencies, and records pertaining to the results of investigations of surveys conducted by or on behalf of any governmental regulatory agency may be discoverable and admissible in a civil action against a healthcare provider if the surveys and related documents are directly related to the type of injury allegedly sustained by the patient at issue in the civil action and the deficiencies have either been admitted by the healthcare provider or have been declared valid through the appellate process established by the administrative agency in charge of reviewing surveys.　When a party seeks to admit into evidence surveys, statements of deficiencies, and related documents, any party to a civil action may request and the court, using its discretion, may conduct a voir dire of the witness supporting the surveys and related documents to determine whether the deficiency is based on reliable evidence.

(5)　When one or more of the provisions of Paragraph (4) are applicable, no committee or entity listed in Subsection A of this Section and no health care provider or health care institution, including the involved licensee or person over whom such board has regulatory authority, shall refuse to provide verbal, written, or recorded information, data, reports, or records as a witness or otherwise on the basis of the privilege provided in Subsection A of this Section or the healthcare provider - patient privilege provided in Code of Evidence Article 510.

Additionally, La.R.S. 44:7 (emphasis added) provides:

A.　Except as provided in Subsections B, C, and E of this Section and R.S. 44:17, the charts, records, reports, documents, and other memoranda prepared by physicians, surgeons, psychiatrists, nurses, and employees in the public hospitals of Louisiana, adult or juvenile correctional institutions, public mental health centers, and public schools for the mentally deficient to record or indicate the past or present condition, sickness or disease, physical or mental, of the patients treated in the hospitals are exempt from the provisions of this Chapter, except the provisions of R.S. 44:36 and 39.　Nothing herein shall prevent hospitals from providing necessary reports pursuant to

R.S. 22:976, R.S. 29:765, R.S. 40:2019, and R.S. 44:17, nor shall any liability arise from the good faith compliance therewith.

B. The governing authority of each public hospital, adult or juvenile correctional institution, public mental health center or public state school for the mentally deficient, may make and enforce rules under which these charts, records, reports, documents or other memoranda may be exhibited, or copied by or for persons legitimately and properly interested in the disease, physical or mental, or in the condition of patients.

C. Whenever the past or present condition, sickness or disease, physical or mental, of any patient treated in any hospital, adult or juvenile correctional institution, center or school, set forth in Subsection A of this Section shall be at issue or relevant in any judicial proceeding, the charts, records, reports, documents and other memoranda referred to in said Subsection A shall be subject to discovery, subpoena and introduction into evidence in accordance with the general law of the state relating to discovery, subpoena and introduction into evidence of records and documents.

D. *The records and proceedings (1) of any public hospital committee, medical organization committee, or extended care facility committee established under state or federal law or regulations or under the bylaws, rules, or regulations of such organization or institution or (2) of any hospital committee, medical organizational committee, or extended care facility committee established by a private hospital licensed under the provisions of R.S. 40:2100 et seq. shall be confidential and shall be used by such committee and the members thereof only in the exercise of the proper functions of the committee and shall not be public records and shall not be available for court subpoena.* No physician; hospital, whether public or private; organization; or institution furnishing information, data, reports, or records to any such committee with respect to any patient examined or treated by such physician or confined in such hospital or institution shall, by reason of furnishing such information, be liable in damages to any person. No member of such a committee shall be liable in damages to any person for any action taken or recommendation made within the scope of the functions of such committee if such committee member acts without malice and in the reasonable belief that such action or recommendation is warranted by the facts known to him. However, medicaid or medicare benefits or insurance benefits provided by a private insurer shall not be denied to any person due to inability to secure records or proceedings referred to in this Section. Nothing contained herein shall be construed to prevent disclosure of such data to appropriate state or federal regulatory agencies which by statute or regulation are otherwise entitled to access to such data.

E. The governing authority of each public hospital, adult or juvenile correctional institution, public mental health center, or public state school for the mentally deficient, shall make available for

11

inspection and copying and shall release upon request an abstract of the patient's record in which all identifying data has been properly encoded to assure confidentiality relating to patients treated in such institutions to the Louisiana cancer registry program established pursuant to R.S. 40:1229.70 et seq.

F. All records of interviews, health surveys, questionnaires, laboratory and clinical data, reports, statements, notes, and memoranda, which contain identifying characteristics of research subjects, hereinafter referred to as "confidential data", and which are procured and prepared by employees of public universities, medical schools, and colleges for the purpose of research, and acting in accordance with institutional Internal Review Board policy and procedures for research involving human subjects, shall be exempt from the provisions of this Chapter and shall be subject to the following provisions:

(1) No part of the confidential data shall be available for subpoena nor shall it be disclosed, discoverable, or be compelled to be produced in any civil, criminal, administrative, or other proceeding, nor shall such records be deemed admissible as evidence in any civil, criminal, or administrative proceeding, or other tribunal or court for any reason.

(2) Nothing in this Section shall prohibit the publishing of data that does not identify individuals or groups which have been assured confidentiality of identification.

(3) Nothing in this Section shall prohibit the publication of results of the research that maintains the confidentiality of the identification of the individual or group that is the subject of research pursuant to this Section.

(4) Nothing in this Section shall prohibit the voluntary disclosure of identifying characteristics of research subjects provided the researcher obtains the consent of the individuals so identified prior to the release of the information.

The supreme court has summarized the purpose of both La.R.S. 13:3715.3 and La.R.S. 44:7 as that of providing "confidentiality to the records and proceedings of hospital committees[.]" *Smith v. Lincoln Gen. Hosp.*, 605 So.2d 1347, 1348 (La.1992). However, that purpose is not all-inclusive. In *Smith*, the supreme court was faced with the question of whether a plaintiff could obtain information regarding a hospital's internal studies concerning the percentage of nosocomial infections per patient admitted to that hospital. The trial court ordered

12

production, and the second circuit court of appeal reversed, finding that La.R.S. 13:3715.3(A) and La.R.S. 44:7(D) provided the hospital blanket immunity from responding to the discovery request. In reversing the court of appeal decision, the supreme court stated the following:

> The reliance of the court of appeal upon La.R.S. 13:3715.3(A) and 44:7(D) is partially misplaced. These provisions are intended to provide confidentially to the records and proceedings of hospital committees, not to insulate from discovery certain facts merely because they have come under the review of any particular committee. Such an interpretation could cause any fact which a hospital chooses to unilaterally characterize as involving information relied upon by one of the sundry committees formed to regulate and operate the hospital to be barred from an opposing litigant's discovery regardless of the nature of that information. Such could not have been the intent of the legislature, especially in light of broad scope given to discovery in general. La.C.C.P. art. 1422. Further, privileges, which are in derogation of such broad exchange of facts, are to be strictly interpreted.

*Id.*

The supreme court went on to explain that:

> This court has already questioned to what extent hospital committee records are protected by the pertinent statutes and considered that policy making and personnel areas are within the protected scope. *Smith v. Louisiana Health and Human Resources Admin.*, 477 So.2d 1118 (La.1985). Nevertheless, when a plaintiff seeks information relevant to his case that is not information regarding the action taken by a committee or its exchange of honest self-critical study but merely factual accountings of otherwise discoverable facts, such information is not protected by any privilege as it does not come within the scope of information entitled to that privilege.

> This does not mean that the plaintiff is entitled to the entire study, as such study may contain evidence of policy making, remedial action, proposed courses of conduct, and self-critical analysis which the privilege seeks to protect in order to foster the ability of hospitals to regulate themselves unhindered by outside scrutiny and unconcerned about the possible liability ramifications their discussions might bring about. As such, the trial court must make an *in camera* inspection of such records and determine to what extent they may be discoverable.

*Id.*

13

The supreme court in *Gauthreaux v. Frank*, 95-1033, p. 2 (La. 6/16/95), 656 So.2d 634, 634, favorably cited its holding in *Smith* and ordered the trial court "to re-examine, in camera if necessary, the discovery requests made by plaintiff to determine whether or not each item of information sought from St. Jude Medical Center is protected by the privilege created in La.R.S. 13:3715.3."

In between its decisions in *Smith* and *Gauthreaux*, the supreme court elaborated on the protection afforded committee members under La.R.S. 13:3715.3(C) in *Smith v. Our Lady of the Lake Hospital, Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. In doing so, the supreme court made it clear that the statute did not provide a blanket immunity, but explained that no liability attaches to a committee member who acts "without malice and in good faith" in performing his or her functions within the committee. *Id.* at 746. When the committee member steps outside the scope of his duties, immunity does not attach. *See also Granger v. Christus Health Cent. La.*, 12-1892 (La. 6/28/13), 144 So.3d 736.

The common thread of the existing jurisprudence addressing the statutes at issue in this litigation is the holding that those statutes do not provide a hospital with total immunity from discovery of anything that occurs within the internal committee operation of a medical facility. However, in this case, the trial court reached the opposite conclusion. That being the case, and while we find that Dr. George and Dura Mater, Inc. are entitled to some relief, we cannot reach the all-encompassing constitutional issue.

As stated by the supreme court in *State v. Brenan*, 99-2291, p. 3 (La. 5/16/00), 772 So.2d 64, 67:

> It is well established that statutes are presumed to be valid, and the constitutionality of a statute should be upheld whenever possible. *State v. Griffin*, 495 So.2d 1306, 1308 (La.1986) (citations omitted). Because a state statute is presumed constitutional, the party challenging the statute bears the burden of proving its

14

unconstitutionality.  The attack will fail if the court determines that a reasonable relationship between the law and the promotion or protection of a public good, such as health, safety or welfare exists. *Theriot v. Terrebonne Parish Police Jury*, 436 So.2d 515 (La.1983).

At this point in the litigation, the trial court has yet to examine the discovery requests to determine whether each item of information sought by Dr. George and Dura Mater, Inc. is protected by the privilege created in either La.R.S. 13:3715.3 or La.R.S. 44:7.  In light of the supreme court's rulings in *Smith*, 605 So.2d 1347, as well as the other supreme court jurisprudence cited herein, we set aside the trial court's protective order and remand for the trial court to re-examine each of the individual discovery requests, and to do so by an *in camera* inspection if necessary to determine whether any of the information sought is protected by the privilege created by the statutes at issue.  If the trial court finds that none is protected, then such a ruling would render the constitutional issue moot.  If the trial court finds that some or all of the information sought is protected, and Dr. George and Dura Mater, Inc. disagree with that ruling, they can seek further relief.

## DISPOSITION

For the foregoing reasons we grant in part and deny in part the supervisory writ of Dr. Bryant George and Dura Mater, Inc.  We set aside the protective order rendered by the trial court, but decline to address the constitutionality of La.R.S. 13:3715.3 or La.R.S. 44:7 at this time.  We remand the matter to the trial court for further proceedings consistent with this opinion.

**WRIT GRANTED IN PART AND DENIED IN PART, AND THE MATTER IS REMANDED WITH INSTRUCTIONS.**

15