In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 16-1074

TALAL S. HAMDAN, M.D.

*Plaintiff-Appellant,*

*v.*

INDIANA UNIVERSITY HEALTH NORTH HOSPITAL, INC.,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-cv-195-WTL-MJD — **William T. Lawrence**, *Judge.*

---

ARGUED DECEMBER 13, 2017 — DECIDED JANUARY 22, 2018

---

Before WOOD, *Chief Judge*, and MANION and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Dr. Talal Hamdan, a U.S. citizen of Middle-Eastern (Palestinian) descent, sued Indiana University Health North Hospital, Inc. for discriminating against him based on race. Dr. Hamdan was not an employee of the hospital and so could not sue under Title VII of the Civil Rights Act of 1964. He sued instead under 42 U.S.C. § 1981, a law first enacted as part of the Civil Rights Act of 1866, after

ratification of the Thirteenth Amendment, to protect the ability of newly freed slaves to enter into and enforce contracts, especially contracts regarding land and their labor. Dr. Hamdan alleged discrimination regarding the benefits, privileges, terms, and conditions in his contractual relationship with the hospital.

A jury trial ended with a verdict for the hospital. Dr. Hamdan then moved for a new trial. He argued that the district court had erred in allowing the hospital to ask him impeachment questions relating to his prior work at other hospitals. Dr. Hamdan contends the subjects of these questions were both irrelevant and privileged under state peer-review statutes. We find no abuse of discretion and affirm the judgment of the district court.

I.  *Factual and Procedural Background*

Dr. Hamdan was an interventional cardiologist with privileges at the hospital from 2008 to 2012. He asserts that he suffered hostile treatment from his colleagues because of his Middle-Eastern background and that the hospital turned a blind eye to the mistreatment. His colleagues, on the other hand, complained about him. They told the hospital that he had engaged in unprofessional conduct, performing risky procedures and making offensive, demeaning, and disrespectful comments to colleagues and staff.

The hospital responded by forcing Dr. Hamdan to participate in a peer-review discipline process. The process is triggered when an incident report is filed against a doctor. A committee of the doctor's peers then reviews the doctor's actions and may recommend discipline. The hospital's peer-review committee issued Dr. Hamdan two disciplinary letters. He

successfully challenged the charges through an appeal process, and the hospital's board of directors ultimately voided the letters. In 2012, however, Dr. Hamdan resigned from the hospital and relinquished his hospital privileges.

Dr. Hamdan then filed this suit against the hospital under 42 U.S.C. § 1981 for race discrimination, alleging that the hospital failed to stop hostile behavior by his colleagues. He alleged, for example, that colleagues barricaded a conference-room door with tables so that he could not pray there and made comments about his "kind." More generally, he alleged in the language of § 1981 that the hospital denied him the same conditions of a contractual relationship that a "white citizen" would have enjoyed.

During discovery the hospital obtained information from Dr. Hamdan's prior employers about a variety of problems in his work at four hospitals—one in Louisiana where Dr. Hamdan did his residency, another in Michigan where he did a cardiology fellowship, and two in Indiana where he had worked for several years more recently.

The case went to trial. During opening statements, Dr. Hamdan's lawyer told the jury he would be asking for between fifteen and fifty-six million dollars for damage to Dr. Hamdan's reputation. Dr. Hamdan testified on direct examination about his reputation. He swore that it was "untarnished" before he received the now-voided disciplinary letters from the defendant hospital. The judge then agreed with the hospital that "the door has indeed been opened regarding Dr. Hamdan's reputation and how the adverse letters have affected a reputation." The judge allowed the hospital to cross-examine the doctor about "other incidents" bearing on his

reputation solely for the purpose of establishing [his] reputation in the medical community."

On cross-examination, the hospital questioned Dr. Hamdan at length about his employment history before joining the hospital. No documents about Dr. Hamdan's prior work history were actually introduced into evidence. Dr. Hamdan conceded orally that former colleagues had filed incident reports about him before he affiliated with the defendant hospital. He testified, however, that he did not remember particular accusations from those incident reports, such as over-sedating patients, behaving inappropriately at a patient's bedside, or interacting poorly with staff. He also testified that he could not recall allegations that he had been condescending and non-collaborative or verbally degrading of colleagues.

Dr. Hamdan's appeal highlights one particular portion of the cross-examination about his reputation for dishonesty. The focus was whether Dr. Hamdan had been placed on a six-month probation at a Michigan hospital for lying to his peers and behaving unprofessionally. After the court had sustained Dr. Hamdan's objection to admitting a document on the incident, the questioning proceeded:

Q Dr. Hamdan, you're not denying, though, that you were placed on probation for six months during your fellowship at Wayne State, though, are you?

A You know, I don't remember being placed on probation.

Q You discussed that fact when you interviewed at Lafayette Hospital, didn't you?

A I'm telling you I don't remember.

Q And during that interview, you were asked why you had not disclosed the probation? Do you recall that?

A Remind me. I don't remember.

Q And why you had not answered that on their application where they had asked about it. Do you recall telling the interviewer that you had forgotten to indicate it?

A Okay.

Q So I understand your testimony, Doctor, today is your testimony you don't remember whether or not you were placed on six-month probation at Wayne State?

A That is correct.

Q And if your records from that institution show that you were, you would have no basis to dispute that, would you?

A I would not.

App. 50–51. Note that Dr. Hamdan never admitted that the probation or underlying dishonesty occurred. The hospital also never admitted extrinsic evidence to corroborate the factual foundation for these questions on cross-examination. During closing argument, though, the hospital's lawyer said that Dr. Hamdan had been given six months' probation for lying to his colleagues, a punishment that "most people would not likely forget; but Dr. Hamdan testified he had no memory of it." Dr. Hamdan's counsel did not object to the comment. The jury returned a verdict for the hospital, and the court entered judgment accordingly.

Dr. Hamdan then moved for a new trial. As relevant to this appeal, he argued that the court erred by permitting the hospital at trial to try to impeach him with questions about matters that were confidential and/or privileged under the peer-review statutes of the three pertinent states, Indiana, Louisiana, and Michigan. He did not argue, however, that the questions involved matters privileged under Federal Rule of Evidence 501. The hospital countered that the evidence was relevant and that there is no peer-review privilege in federal cases.

The district court denied the motion for a new trial. The court first found that Dr. Hamdan had forfeited his argument that the impeachment materials were privileged because he had objected to discussion of them based only on Federal Rule of Evidence 404 and relevance grounds. To the extent that Dr. Hamdan had mentioned the state peer-review statutes and confidentiality, he had done so only to support his argument that the complaints were not relevant to his claim of reputational injury. He had not argued at trial that the impeachment evidence was inadmissible because it was privileged under the applicable peer-review statutes. And even if Dr. Hamdan had not forfeited the issue, the court said, he had not presented sufficient evidence about the incident reports filed by former colleagues to show that they fell under the peer-review statutes. As for Dr. Hamdan's relevance argument, the judge stood by his prior rulings, adding: "If, in fact, Dr. Hamdan had a poor reputation at various hospitals, the peer-review privilege would not necessarily foreclose that reputation from following him in his career."

II. *Analysis*

On appeal Dr. Hamdan first challenges the district court's ruling that he did not properly preserve his argument that the impeachment materials were privileged under the state peer-review statutes. But Dr. Hamdan concedes that he never explicitly invoked Federal Rule of Evidence 501, which governs evidentiary privileges in federal court, in his written or oral objections. He offers two reasons for finding that the hospital had sufficient notice of the objection anyway. Neither is persuasive.

First, Dr. Hamdan contends that both he and the court throughout the proceedings had used the term "confidentiality" interchangeably with "privilege." But Dr. Hamdan argues on appeal that confidentiality and privilege are two distinct ideas that are *not* interchangeable. Using them interchangeably in the district court was not sufficient to alert the district court to the argument Dr. Hamdan actually makes on appeal.

Second, Dr. Hamdan observes that the peer-review materials were subject to an agreed protective order providing that privileged matter would retain its privileged character despite disclosure in discovery. That's true, but the problem stems from the trial itself. The forfeiture is based on Dr. Hamdan's failure to assert a peer-review privilege before the district court at trial. We agree with the district court that Dr. Hamdan forfeited his argument about state statutory privileges.

Forfeiture aside, the district court was not required to apply those state statutes here. First, federal courts apply the federal common law of evidentiary privileges—not

state-granted privileges—to claims like Dr. Hamdan's that arise under federal law. See Fed. R. Evid. 501; *University of Pennsylvania v. EEOC*, 493 U.S. 182, 188–89 (1990); *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923, 926 (7th Cir. 2004); *EEOC v. Illinois Dep't of Employment Security*, 995 F.2d 106, 107–08 (7th Cir. 1993). A party arguing for a new evidentiary privilege under Rule 501 must confront the general obstacle that evidentiary privileges are disfavored because they impede fact-finding by excluding relevant information. See *University of Pennsylvania*, 493 U.S. at 189; *United States v. Nixon*, 418 U.S. 683, 710 (1974) (privileges "are in derogation of the search for truth."); *United States v. Wilson*, 960 F.2d 48, 50 (7th Cir. 1992); *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061–62 (7th Cir. 1981). This court has declined to recognize a federal peer-review privilege, reasoning that the need for truth outweighs the state's interest in supplying the privilege. *Memorial Hospital*, 664 F.2d at 1061–62; see also *Adkins v. Christie*, 488 F.3d 1324, 1328–29 (11th Cir. 2007) (rejecting privilege in doctor's § 1981 discrimination case); *Virmani v. Novant Health Inc.*, 259 F.3d 284, 293 (4th Cir. 2001) (following *Memorial Hospital* and rejecting privilege).

Even if the state laws applied, the judge did not abuse his discretion in allowing the impeachment questions about incident reports. Dr. Hamdan did not establish that the particular impeachment questions were prohibited by the states' peer-review statutes. The central purpose of those statutes is to bolster the effectiveness of a hospital's peer-review committees in improving patient care and medical services by protecting from disclosure the proceedings and reports of the committees. See *Memorial Hospital*, 664 F.2d at 1062; *George v. Christus Health Southwestern Louisiana*, 2016-412 (La. App. 3 Cir. Oct. 12, 2016), 203 So. 3d 541, 551, citing *Smith v. Lincoln*

*Gen. Hospital*, 605 So. 2d 1347, 1348 (La. 1992). The purpose of the privilege is not furthered by protecting from disclosure evidence of a doctor's poor reputation in a suit in which the doctor alleges that others have damaged his reputation.

The scope of the peer-review privilege also does not cover the types of questions that Dr. Hamdan was asked. The privilege is limited. As with other evidentiary privileges, where the peer-review privilege applies, it protects certain communications from disclosure, not the underlying facts discussed in those communications. If a penitent confesses a crime to his priest, for example, neither may be asked about the confession itself, but the penitent may certainly be asked about the facts of the crime. Similarly here, the hospital was entitled to ask Dr. Hamdan about facts he knew about his own past and reputation, regardless of whether any peer-review committee had investigated those incident reports or complaints. See *George*, 203 So. 3d at 551. Those questions did not invade any privileged realm of another hospital's peer-review process.[1]

Dr. Hamdan also argues that the district court abused its discretion in concluding that the impeachment questions were relevant. We find that the judge acted well within his

---

[1] The one incident where the cross-examination went further involved the reported probation in Michigan. The transcript shows that counsel was asking questions based on a letter. Dr. Hamdan testified that he did not remember the letter or an accusation of dishonesty. The letter itself did not come into evidence, though the extended and specific questioning on the basis of the letter must have signaled to the jury that the letter in fact said what the lawyer's questions asserted. Either that or the lawyer was executing an Oscar-worthy bluff. For the other reasons in the text, however, we find no reversible error. Also, Dr. Hamdan's repeated and sometimes sarcastic claims that he did not remember any complaints or discipline surely did not help his credibility with the jury.

discretion. As the judge noted at trial, Dr. Hamdan testified that he lost employment and other income-earning opportunities because the hospital had tarnished his reputation. The hospital simply tried to introduce evidence that his reputation in the medical community was not untarnished before he came to the hospital. We agree with the judge that evidence about Dr. Hamdan's problems with colleagues and staff in prior hospitals would be relevant to his reputation and to the extent to which he might have deserved damages for any actions the defendant hospital took.

Finally, Dr. Hamdan argues that the hospital struck a low blow in closing argument by reminding the jury that he had not remembered whether he had been given six months of probation in the Michigan hospital. Dr. Hamdan points out correctly that the probation does not have any basis in the admitted evidence. Dr. Hamdan himself testified that he did not remember the matter, and the hospital introduced no other evidence to prove the probation was in fact imposed.

This portion of the closing argument does not call for a new trial. Dr. Hamdan at least forfeited any objection on the point by failing to object during the argument itself. See *Soltys v. Costello*, 520 F.3d 737, 745 (7th Cir. 2008) (failure to object to comments in closing argument "waived" challenge on appeal); see generally *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 238–39 (1940) ("counsel for the defense cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were prejudicial"). To the extent there was a problem with the defense argument, the district judge could have cured it with a few well-chosen words to remind the jury about the difference between lawyers' questions and

evidence. (One example: "Have you stopped kicking your dog?" The question itself is not evidence that the witness even has a dog, let alone that he has ever kicked it. What matters as evidence is the witness's answer to such a loaded and often objectionable question.)  Without at least an objection, there is no sound basis for ordering a new trial.

The judgment of the district court is AFFIRMED.